### LOTTIE CREWS, GUARDIAN, ETC.
### v. MOSELEY BROTHERS.

June 16, 1927.

1. WORKMEN'S COMPENSATION ACT—*Accident—Burden of Proof.*—Before a recovery may be had under the workmen's compensation act, the burden is upon the claimant to prove by a preponderance of the evidence that the claimant suffered an accident arising out of and in the course of his employment.

2. WORKMEN'S COMPENSATION ACT—*Construction of Act—Liability Must be Based on Facts.*—While it is always the endeavor of the courts to construe the compensation statute liberally in order to carry out its beneficent purpose, it must not be overlooked that liability cannot rest upon imagination, speculation, or conjecture, but must be based upon facts established by the evidence and so found by the Commission.

3. WORDS AND PHRASES—*Apoplexy.*—Webster's New International Dictionary defines apoplexy to be, "a sudden diminution or loss of consciousness, sensation and voluntary motion, usually caused by extravasation of blood or serum into the brain or spinal cord."

4. WORKMEN'S COMPENSATION ACT—*Accident—Apoplexy—Case at Bar.*—The instant case was an appeal from the action of the Industrial Commission dismissing a claim for compensation filed by the appellant against the appellees. The appeal presented the sole question of whether a physical collapse followed by apoplexy and resulting in death eight days after, was an accident within the meaning of the workmen's compensation act. Decedent, apparently in his usual hale and hearty condition, was digging a ditch when his fellow-workman noticed that he was not in normal condition and suggested that he cease work. Shortly after decedent left the ditch, he became rapidly worse and lost consciousness before a physician reached him. On the arrival of the physician he was sent to a hospital, where he died. The work that he was engaged upon was his regular occupation. That decedent suffered a stroke of apoplexy was not disputed, but there was no evidence that he was struck, fell or overexerted himself.

*Held:* That it could not be said that the deceased suffered such an accident as is contemplated by the workmen's compensation act.

5. WORKMEN'S COMPENSATION ACT—*Accident—Technical Sense of the Term.*—While the courts have differed in their definition of the word "accident," they have generally agreed that it should not be employed in too technical a sense.

6. WORKMEN'S COMPENSATION ACT—*Accident—"Unusual and Unexpected."* If an injury is such as follows from ordinary means, voluntarily employed, in a not unusual and unexpected way, it cannot be called a result effected by accidental means, but if, in the act which precedes the injury, something unforeseen, unexpected, unavoidable occurs, which produces the injury, then the injury has resulted through accidental means.

7. WORKMEN'S COMPENSATION ACT—*Accident—Disease.*—The occurrence of an accident is a condition precedent to compensation, and to recover for a disease, it must result naturally and unavoidably from an accident.

8. WORKMEN'S COMPENSATION ACT—*Accident—Apoplexy.*—The mere fact that deceased died of apoplexy is in no sense indicative of an accident. There must be shown a causal connection between the disease and the accident suffered. In the instant case the claimant failed to carry this burden.

9. WORKMEN'S COMPENSATION ACT—*Conflict in the Evidence—Finding of Commission.*—The instant case presented the sole question of whether a physical collapse followed by apoplexy resulting in death was an accident within the meaning of the workmen's compensation law. There was a conflict in the evidence as to the cause of death. The Commission, in passing upon this conflict, found against the contention of appellant.

*Held:* That this finding of fact, based upon evidence adduced before the Commission, was controlling.

Appeal from an order of the Industrial Commission of Virginia.

*Affirmed.*

The opinion states the case.

*Fred Harper*, for the appellant.

*Caskie & Frost* and *G. M. Moseley*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

This appeal calls in question an order entered by the Industrial Commission, dismissing a claim for compensation filed by the appellant against the appellees.

The undisputed facts found by the Commission may be summarized thus: On August 1, 1926, Stewart Robertson, a colored man aged forty-one years, to all appearances hale and hearty, was, and had been for one year and eight months prior thereto, in the employment of Moseley Brothers, general contractors, at Lynchburg, Virginia, at an average weekly wage of $18.00 His employment had been that of digging ditches and making excavations. On the day in question, he and a fellow-worker, Addison Cobb, were digging a ditch in the vicinity of Peakland, a suburb of Lynchburg. The depth of the ditch was shown to have been between eight and ten feet. About eleven o'clock a. m., on August 1, 1926, Cobb had occasion to speak to Robertson and noticed that the latter was not in normal condition, and asked him what his trouble was. He replied that he was not feeling well, whereupon Cobb suggested that he cease work and assisted him from the ditch. Shortly after he had left the ditch, Robertson rapidly became worse and lost consciousness before a physician reached him. On the arrival of the physician, he was sent to the Lynchburg Hospital, Lynchburg, Virginia, where he died eight days later.

It appears from the testimony of Addison Cobb that the work he and Robertson were doing on August 1, 1926, was their regular occupation; that sometimes they worked in shallow ditches, and on other occasions they were called upon to dig deeper ditches than that in which they were working when Robertson was taken ill; that it was a reasonably hot day and that in the ditch it was, of course, "pretty hot."

A certified copy of the weather report as issued by the United States Weather Bureau at Lynchburg, Virginia, was introduced in evidence. This shows that the temperature at eleven o'clock a. m., August 1, 1926, was 73° and at twelve o'clock m. it was 75°. Prior to eleven o'clock the temperature was below 73°.

This appeal presents the sole question: Is a physical collapse, followed by apoplexy and resulting in death eight days thereafter, an accident within the meaning of the workmen's compensation law?

The statute (Laws 1918, chapter 400) defines an accident as follows:

"Section 2(d). 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

[1, 2] Before a recovery may be had in this case, the burden is upon the claimant to prove by a preponderance of the evidence that the deceased, Stewart Robertson, suffered an accident arising out of and in the course of his employment. While it is always the endeavor of the courts to construe the compensation statute liberally, in order to carry out its beneficent purpose, it must not be overlooked that liability cannot rest upon imagination, speculation, or conjecture, but must be based upon facts established by the evidence and so found by the Commission. *U. S. Fuel Co.* v. *Ind. Com.*, 310 Ill. 85, 141 N. E. 401.

[3] The fact that the decedent suffered a stroke of apoplexy, typical in all respects, is not disputed. Webster's New International Dictionary defines apoplexy to be, "a sudden diminution or loss of consciousness, sensation and voluntary motion, usually caused by extravasation of blood or serum into the brain or spinal cord."

[4] The record discloses that on August 1, 1926, Robertson was in his usual hale and hearty condition; that the work he was doing on that day was similar, if not practically identical to that which he was accustomed to do; that shortly after he left the ditch in which he had been working he lost consciousness and remained in that condition until death ensued. The record, however, fails to disclose that he was struck by any object, or sustained a fall, or overexerted himself, or that he suffered, in any manner whatever, a traumatic injury. In this state of the record, can it be said that the deceased suffered such an accident as is contemplated by the Virginia statute?

[5] While the courts have differed in their definition of the word "accident," they have generally agreed that it should not be employed in too technical a sense.

[6] In *United States Mutual Accident Asso.* v. *Berry*, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, it is said: "If an injury is such as follows from ordinary means, voluntarily employed, in a not unusual and unexpected way, it cannot be called a result effected by accidental means * * * but that, if, in the act which precedes the injury, something unforeseen, unexpected, unavoidable occurs, which produces the injury, then the injury has resulted through accidental means."

Tested by this definition, when considered in the light of the findings of fact of the Commission, which are supported by the evidence, we are unable to say that the deceased came to his death as a result of an accident.

Three doctors testified before the Commission. None of them had ever examined Robertson prior to the apoplectic stroke. One of them gave as his opinion that the work in which Robertson was engaged

may have been responsible for his death. The other two physicians stated that death from apoplexy is liable to ensue where there is neither activity nor undue exertion.

No post-mortem examination was held; no ante-mortem examination was had; outside the realm of speculation there is nothing in the case to indicate the aggravation of a preexisting disease.

While under the compensation law occupational diseases are excluded, compensation has been awarded in cases where it appeared that aggravation of a pre-existing condition had occurred. Awards in such cases, however, have been based primarily on the conception of the statute, that under its terms the claimant was entitled to compensation by reason of his status as an employee who had suffered an accident arising out of and in the course of his employment, and not by reason of a sum due by virtue of his being classed as an insurance risk.

[7] This court has recognized this policy in *Clinchfield Co.* v. *Kizer*, 139 Va. 451, 124 S. E. 271. It is there held that the occurrence of an accident is a condition precedent to compensation, and that to recover for a disease, it must result naturally and unavoidably from an accident.

In *Dreyfus & Co.* v. *Meade*, 142 Va. 567, 129 S. E. 336, it is said: "The words 'arising out of' and the words 'in the course of' are used conjunctively. In order to satisfy the statute, both conditions must concur; it is not sufficient that the accident occur in the course of the employment but the causative danger must also arise out of it. The words 'arising out of' refer to the time, place and circumstances under which the accident takes place. By the use of these words, it was not the intention of the legislature to

make the employer an insurer against all accidental injuries which might happen to the employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work, in the scope of the workman's employment or incidental to such employment and accidents to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable to some special degree to the particular employment are excluded."

These decisions are in accord with the definition of an accident as laid down in *U. S. Mutual Accident Asso.* v. *Berry, supra.*

[8] The mere fact that Robertson died of apoplexy is in no sense indicative of an accident. There must be shown a causal connection between the disease and the accident suffered. This burden the claimant has failed to carry.

[9] There is a conflict in the evidence as to the cause of death. The commission, in passing upon this conflict, has found against the contention of appellant. This finding of fact, based upon evidence adduced before the commission, is both by statute and decision controlling in the instant case.

There is no error in the decision of the Industrial Commission and it will be affirmed.

*Affirmed.*