# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

BIG JACK OVERALL COMPANY, INC., EMPLOYER; UNITED
STATES FIDELITY AND GUARANTY COMPANY, CARRIER, V.
ELLA BRAY, CLAIMANT, EMPLOYEE.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Browning, JJ.

The opinion states the case.

*H. M. Bandy* and *Parrish & Butcher,* for the appellants.

*H. G. Lavinder,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

The employer and the insurance carrier, by this petition, are seeking to reverse an award against them in favor of the employee. The facts found by the majority of the Commission are stated thus:

"Ella Bray, the claimant, is a woman fifty-four and one-half years of age with an average weekly wage of $12.00. She has been working at the plant of the Big Jack Overall Company in Bristol, Va., for several years past. While she was not a robust woman, yet, she was able to work for her living and has been a steady worker during the past years. She has had only one operation, and that was for a female trouble about sixteen years ago. Since that time she has had occasional adhesions around the field of operation and occasional troubles with her stomach, these spells causing her to lose a little time, never over two days at a time, every month or two. She had never prior to the accident under investigation had any rheumatism, arthritis, gout, or rheumatic gout, and had never been treated for anything of the kind.

"On April 4, 1932, she went to work in good, normal health. While she was at work on that morning, and in the usual course of her employment, she attempted to reach across a low truck and lift a bundle weighing from forty to fifty pounds, reaching not directly across the truck but sideways, and to her right in a stooping position, and as she attempted to lift the bundle in this position, she felt a sudden snap or tear in her back and side, causing her to become deathly sick, with intense pain in her back, temporarily blind, losing the use of her legs, and rendering her helpless. She has been helpless ever since."

The decision in this case turns on the construction to be placed on the words "injury by accident." The same term was before this court for construction in *Clinchfield Carbocoal Corporation* v. *Kiser,* 139 Va. 451, 124 S. E. 271, 272, in which it was held that where an employee over a period of time had gradually developed tuberculosis from the

conditions under which he was working, such disease, so contracted, was not within the meaning of the act. Judge West, in the course of the opinion, said:

"It is clear that this act, like the English Workmen's Compensation Law, provides compensation only for 'injury by accident,' and not for every 'personal injury' an employee may sustain. The Virginia act, unlike the Massachusetts act (Laws 1911, ch. 751, as amended by Laws 1912, ch. 571), makes the occurrence of an accident a condition precedent to compensation."

The court cited with approval the case of *Eke* v. *Hart-Dyke* (1910), 2 K. B. 677, where it was held:

"Except in the case of the industrial diseases provided for by section 8, unless the applicant can indicate the time, day, circumstances, and place in which the accident occurred, which occasioned the disease, by means of some definite event, a case of injury by accident within the meaning of section 1, subs. 1, of the act cannot be established."

In *Crews* v. *Moseley Bros.*, 148 Va. 125, 138 S. E. 494, 495, it was held that where the facts showed merely that the employee had suffered a collapse, followed by apoplexy, resulting in death eight days thereafter, there was no accident within the meaning of the act. Judge Campbell, delivering the opinion of the court, said:

"The record, however, fails to disclose that he was struck by any object, or sustained a fall, or overexerted himself, or that he suffered, in any manner whatever, a traumatic injury."

Plaintiffs in error insist that the meaning of the words "injury by accident" should be limited to the test applied in *U. S. Mutual Accident Association* v. *Barry,* 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60, cited in *Crews* v. *Moseley Bros., supra.* That case involved the construction of an accident insurance policy which made the company liable if the insured "shall have sustained bodily injuries effected through external, violent and accidental means." The facts were that the insured, who was about thirty

years of age and apparently strong and healthy, weighing from 160 to 165 pounds, jumped from a platform between four and five feet high, to the ground. Within a few minutes he became sick and died nine days later. There was conflicting testimony as to the cause of his death. Plaintiff contended that when the insured jumped from the platform he landed heavily on his heels, instead of on his toes, and that the jar produced a stricture of the duodenum, which caused death. The court, in sustaining the judgment on the verdict, said:

"* * * the question was, whether there was anything accidental, unforseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In other words, the court held, in substance, that although the insured intended to jump from the platform to the ground, which would necessarily jar him, there was evidence tending to show that he landed on the ground in a somewhat different manner from that intended, which made the consideration of "accidental means" a question for the jury.

We have analyzed this case in detail for the purpose of showing how slight a mishap the court held to be within the meaning of the terms of the policy, which provided that the insured "shall have sustained bodily injuries effected through external, violent and accidental means * * * and such injuries alone shall have occasioned death."

The contention is that the term "injury by accident" used in Workmen's Compensation Acts should be held to have the same meaning as the words "bodily injury, or death sustained by external, violent and acci-

dental means," generally used in accident insurance policies. This contention has been rejected by both the Federal and State courts. See *Pacific Employers' Ins. Co.* v. *Pillsbury,* Circuit Court of Appeals, 9th Circuit, 61 Fed. (2d) 101.

◼ Webster's New International Dictionary defines the word "accident" as "a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency; often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; casualty; mishap." According to this definition, which seems to be accepted by the great majority of the courts (see cases cited in Schneider's Workmen's Compensation Law, 2d Ed., section 135), cause and effect are included; that is, there is no clear-cut distinction made between the two.

This is apparent when the term is applied to an injury resulting from a strain. A man intends to lift a heavy object, but in lifting he miscalculates the resisting force of his body, a blood vessel bursts and death follows. Even in such a case recovery has been allowed under an accident insurance policy which covered death "in consequence of an accident." In the *Barry Case* this finding was approved in the following language:

"In *North American Ins. Co.* v. *Burroughs,* 69 Penn. St. 43 [8 Am. Rep. 212], the policy was against death 'in consequence of accident,' and was to be operative only in case the death was caused solely by an 'accidental injury.' It was held that an accidental strain, resulting in death, was an accidental injury within the meaning of the policy, and that it included death from any unexpected event happening by chance, and not occurring according to the usual course of things."

Judge Chichester, speaking for the court in *Newsoms* v. *Commercial Casualty Ins. Co.,* 147 Va. 471, 137 S. E. 456, 457, 52 A. L. R. 363, said:

◼ "In Vance on Insurance, page 569, it is said 'The definition of accident generally assented to is an event

happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens.' (*McGlinchey* v. *Fidelity & Casualty Company,* 80 Maine 251, 14 Atl. 13, 6 Am. St. Rep. 191.) This definition has been so generally used and quoted as not to require additional citation.

"It can certainly not be contended that the accident here in issue was under usual circumstances or expected by the insured, but, on the contrary, the evidence shows that the insured had been in good health for much over a year and up until the very minute of eating the canned pork and beans; that there was no thought of injury in any way, nor had there been any warning by even slight sickness that the beans would be apt to affect insured's health in any extraordinary way. Insured did not know that they were harmful, nor are they inherently so by common knowledge. Under the circumstances, therefore, the death and accident were anything else but usual and anything else but expected."

Judge Parker, of the Fourth Judicial Circuit, in *Zurich, etc., Co.* v. *Flickinger* (C. C. A.), 33 Fed. (2d) 853, 68 A. L. R. 161, approved the above definition of an accident, and held that where the effect was not the natural and probable consequence of the means employed, and was not intended or designed, the injury was produced by accidental means.

The term "personal injury by accident," found in the Workmen's Compensation Act in many of the States, was copied from the English act of 1896, amended in 1906, and before its adoption by the States the term had been construed by the English courts. The leading case, certainly the one most cited by American courts, is *Fenton* v. *Thorley,* 19 T. L. R. 648, 5 W. C. C. 1. The facts in that case were that Fenton in attempting to move a wheel, which was a part of his duties, found that the wheel, for some reason, was stuck. He called an assistant and while the two were attempting to move it Fenton felt something

which he described as a "tear in his inside;" later it was discovered that he was ruptured. The case finally reached the House of Lords. Lord Macnaughten, in his opinion, said:

"There was no evidence of any slip, or wrench, or sudden jerk. It may be taken that the injury occurred while the man was engaged in his ordinary work, and in doing or trying to do the very thing which he had meant to accomplish. * * * If a man in lifting a weight or trying to move something not easily moved were to strain a muscle, or rick his back or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight or trying to move something too heavy for him. * * * A man injures himself by doing some stupid thing, and it is called an accident, and he gets the benefit of the insurance. It may even be his own fault, and yet compensation is not to be disallowed, unless the injury is attributable to 'serious and wilful misconduct' on his part. A man injures himself suddenly and unexpectedly by throwing all his might, and all his strength, and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the act because he exerted himself deliberately, and there is an entire lack of the fortuitous element. I cannot think that is right."

In the same case, Lord Robertson said:

"No one out of a law court would ever hesitate to say that this man met with an accident; and when all is said I think this use of the word is perfectly right. The word 'accident' is not made inappropriate by the fact that the man hurt himself. * * * Suppose the wheel had yielded and been broken by exactly the same act, surely the breakage would be rightly described as accidental. Yet the argument against the application of the act is in this case exactly the same, that there is nothing accidental in the matter, as the man did what he intended to do. The

fallacy of the argument lies in leaving out of account the miscalculation of forces, or inadvertence about them which is the element of mischance, mishap, or misadventure."

There are numerous other cases; some of which reached the House of Lords, which indicate some inconsistency, but the interpretation of the term "personal injury by accident" as decided in the above case has been consistently followed in England, provided it is proven that the injury could be traced to a definite date and was not the result of a disease or a breakdown of gradual development. See Employers' Liability, Roberts and Wallace (4th Ed.) 553; Dawbarn on Employers' Liability (4th Ed.) 99.

■ Such being the origin of the term, it is not surprising that the majority of the American courts have followed the construction of the English courts, although that construction is more inclusive than a strict literal interpretation would permit. The Virginia act, adopted in 1918 (Acts 1918, ch. 400), "being, practically speaking, a copy of the Indiana act, the judicial construction placed upon the latter act in that State will be considered to have been adopted along with the act in this State." *Hoffer Bros.* v. *Smith,* 148 Va. 220, 138 S. E. 474, 476.

We, therefore, turn to the Indiana decisions to ascertain the interpretation placed upon the term by the courts of that State, and find that in 1917 the question was before that court in two cases. In *United Paperboard Co.* v. *Lewis,* 65 Ind. App. 356, 117 N. E. 276, 277, this is said:

"Repeated efforts have been made to define an 'accident' as used in similar acts in various jurisdictions, but the definitions are not uniform. One frequently approved defines an accident to be 'an unlooked for mishap, an untoward event which is not expected or designed.' "

The other case is that of *Haskell & Barker Car Co.* v. *Brown,* 67 Ind. App. 178, 117 N. E. 555. There the pertinent facts were that employee was engaged in unloading steel sheets from a car. Each sheet weighed from 465 to 485 pounds, and was moved by means of a derrick or

crane operated by an engine. It was the duty of the employee to attach a chain and hook from the crane to the rivet holes in the sheet. The sheets stood on edge in the car and sometimes became jammed together, requiring a good deal of physical effort to get them apart. Brown, while attempting to place the hook in the sheet, was seen to put his hand to his throat and stagger off. Shortly after this he returned home and died from aneurism, a bulging out of the walls of the blood vessels. The doctor testified that the wall of the blood vessel had been weakened by disease, but that in his opinion the bulging out at that particular time was caused by a strain. The court repeated the definition of accident found in *United Paperboard Co.* v. *Lewis, supra,* and held that the injury was compensable.

Again, in 1918, the same question was before the Indiana court in *Indian Creek Coal & Mining Co.* v. *Calvert,* 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709, where the facts, as stated by the Industrial Board, were that the employee, prior to assisting in shoving a freight car loaded with coal, was apparently a strong, healthy man. While shoving the car he suddenly stopped and complained of his side, but went back to loading coal in the ordinary way, lifting chunks of coal weighting from thirty-five to forty-five pounds. Within a few minutes, he complained again of his side and later died. An autopsy disclosed that the descending aorta was ruptured on the right side and that a diseased condition existed at the point of rupture, indicated by an unnatural thinness of the wall, and that when such conditions exist sooner or later there will be a rupture, with fatal hemorrhage.

The question presented was, Was the decedent's death caused solely by his disease progressing naturally, or did he suffer an accident within the meaning of the act, which concurred with his malady to produce death?

It was there urged, as it is here, that the word "accident" must be given the same construction in the Workmen's Compensation Acts that it is given in accident in-

surance policies. That construction was rejected and the construction given in the *Brown Case* was adhered to. The opinion reviews a number of both English and American cases construing the word "accident" as used in the Workmen's Compensation Acts in the different States and in England and adhered to the former conclusion of the court and allowed compensation. There was a dissenting opinion in that case, from which Chairman Nickels has quoted at length in his dissent here. On a rehearing, the court adhered to its original opinion. See *Indian Creek Coal & Mining Co.* v. *Calvert*, 68 Ind. App. 495, 120 N. E. 709.

In *Terre Haute, etc., Mfg. Co.* v. *Wehrle*, 76 Ind. App. 656, 132 N. E. 698, the court, confronted with the same conditions which face us in the case under consideration, stated thus:

"The first contention is based on the proposition that to bring a case within the statute two separate and distinct things must exist, *viz.*, an accident and an injury; the accident being the cause and the injury the result. Counsel insist that these two things must not be confused. * * *

"When taken literally, the statute seems to sustain counsel's contention. Literally it seems to indicate that there must be an accident external to the body of the workman, a mishap in the environment, which results in injury to his body. In the case at bar there was no external accident, no mishap in the environment. The workman was doing his work in the natural, normal, and regular way. He was doing his work exactly as he intended to do it. But the injury was accidental. It was not expected, anticipated, foreseen, designed, or intended. But it is so well settled as no longer to admit of argument that in cases like the one at bar, where the injury results from muscular strain and exertion, the workman is entitled to compensation. To include cases of that character, the courts regard the words of the statute 'personal injury by accident' as equivalent to the words 'accidental injury.' "

The latest expression from the Indiana court to which

our attention has been called was made in 1931, in *Stacey Bros., etc., Co.* v. *Massey,* 92 Ind. App. 348, 175 N. E. 368, where this is stated:

"The words 'by accident arising out of and in the course of the employment,' as used in the Workmen's Compensation Act, should be liberally construed in harmony with the humane purposes of the act. * * *

"The word 'accident' as used in the Workmen's Compensation Act has been construed by this court many times, and has been repeatedly held to be used in its popular sense, and means any mishap or untoward event not expected or designed."

This definition of the word "accident" is broad enough to include the physical collapse of a workman from a natural cause while he is performing the duties of the employment, and without the happening of any untoward event connected with the employment. The statute expressly negatives recovery under such circumstances. The Pennsylvania court, in dealing with the same subject, is perhaps more accurate. In *Mills* v. *Susquehanna Collieries Co.,* 107 Pa. Super. Ct. 432, 164 Atl. 69, 70, the court quotes with approval from *McCauley* v. *Imperial Woolen Company,* 261 Pa. 312, 327, 104 Atl. 617, 622, as follows:

■ "If the incident which gives rise to the injurious results complained of can be classed properly as a 'mishap,' or 'fortuitous' happening—an 'untoward event, which is not expected or designed'—it is an accident within the meaning of the Workmen's Compensation Act. * * * When, however, death results from germ infection, to bring a case of this character within the act of 1915, *supra,* the disease in question must be a sudden development from some such abrupt violence to the physical structure of the body as already indicated ('lifting heavy weights, intense heat operating directly on the part of the body internally affected') and not the mere result of gradual development from long-continued exposure to natural dangers incident to the employment of the deceased person, as in cases of occupational diseases, the risks of which

are voluntarily assumed." See A. L. R. series annotations to *Baggot Co.* v. *Industrial Commission,* 290 Ill. 530, 125 N. E. 254, 7 A. L. R. 1611; *Steel Sales Corp.* v. *Ind. Comm.,* 293 Ill. 435, 127 N. E. 698, 14 A. L. R. 274; and other annotations in 19 A. L. R. 113 and 60 A. L. R. 1299.

While many legal controversies have arisen over the construction of the word "accident," which is not a technical, legal expression, we have not been able to find or formulate an exact, comprehensive, legal definition as applied to all circumstances. In the final analysis we have to keep in mind the settled construction given to the act by the courts of last resort in those jurisdictions from which the Virginia act was taken as the construction the legislature intended to adopt, the humane purpose of the act itself, and apply these principles to the varying facts in each particular case.

Turning to the facts in the case under consideration: The family physician, who had attended claimant for some fifteen years, testified that on the day she was hurt he examined her and found that she was suffering intense pain in the small of her back, which was so tender to the touch that he could not make a thorough examination; that he thought the wrench in the back would disappear by treatment, but when she showed no improvement after three or four weeks he had an X-ray picture taken and reached the conclusion that she was suffering with a rupture or detachment of some of the muscles of the spinal column, or there was a slipping of the articulations, or both, which was caused by the strain or tear of some kind to her back. That is the doctor's opinion as to both cause and effect.

When we examine other evidence tending to prove an accident, we are not surprised that the claimant and her fellow employees testified that the outward manifestation of her injury appeared suddenly; that she was temporarily blind, was nauseated, fainted, lost control of her legs, and had to be carried home from the place of her employment. All of this testimony is confined to the ef-

fect, but it is the outward manifestation of such effect immediately following the origin, and is corroborative of claimant's testimony of the cause.

It is undisputed that on the morning of the injury she was a woman apparently in normal health; she testified that she attempted to lift a bundle of clothes, weighing forty or fifty pounds, from a low truck, not straight up, as she had been doing for four or five years, but with her body turned or twisted to the right, and in so doing injured her back. The injury resulted not so much from the weight of the bundle but because of the strained position of her body at the time she made the attempt. She further testified that she recognized at once that she was injured, that "something * * tore in two in my back like it snapped in two."

The unusual position of her body, while voluntarily assumed, produced the unusual, sudden and unexpected strain upon the muscles of her back which caused the "injury by accident" within the meaning of the act.

For the reasons stated, the award of the Commission is affirmed.

*Affirmed.*

HOLT, J., concurs in result.

EPES, J., dissents.