# 𝖘taunton

## BOARD OF SUPERVISORS OF AMHERST COUNTY V. PERCY J. BOAZ.

September 5, 1940.

Record No. 2198.

Present, All the Justices.

The opinion states the case.

*J. Tinsley Coleman, Jr.,* and *W. H. Carter,* for the appellant.

*W. Kinckle Allen,* for the appellee.

BROWNING, J., delivered the opinion of the court.

The appellee, Boaz, a carpenter, was engaged by the janitor of the courthouse of Amherst county, Virginia, to repair a window of the courthouse. It needed some panes of glass and a new sash cord. In doing this work a screw driver, which he was using, rebounded and struck his eye, injuring it to such an extent that its removal became necessary.

It required about three hours to do the work, for which he was paid $1.50 by a check mailed to him by the clerk of the Board of Supervisors.

Boaz filed a claim for compensation for the injury before the Industrial Commission of Virginia. The initial hearing commissioner, Nickels, Chairman, dismissed the case, deciding that the claimant was a casual employee, and therefore, the injury was not compensable under the law. The case was reviewed before the full commission, with

the result that the majority opinion was in favor of the claimant, Nickels, Chairman, dissenting. The case is before this court upon appeal.

Section 1887 (2) (b) of the Workmen's Compensation Act of Virginia provides: " 'Employee' shall include every person, * * * except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer; * * * "

Subsection (15) of the statute provides that it shall not apply to casual employees.

Section 2728 of the Code of Virginia charges a board of supervisors of a county with the duty of the care of the property of that county and kindred sections require that the buildings be kept in repair by the same authority. The claimant relies largely upon these provisions to sustain his claim to compensation.

We think that a mere statement of the employment and its incidents shows its nature to have been casual rather than periodic, regular or permanent. It was an act naturally incident to the ownership of property. It was what a careful and prudent owner or caretaker would do to prevent deterioration. The employment was casual and the claimant was a casual employee, but, under the holding of this court in *Hoffer Bros.* v. *Smith, infra,* this does not defeat his claim if such employment was in the usual course of the trade, business, occupation or profession of the employer. These terms as used in the statute are very nearly synonymous. Their grouping and association emphasize this. They connote activities of persons or corporations of some continuity of existence and a degree of regularity and permanency which attaches to one's method and means of material being and livelihood. They do not, we think, bear any relation to the functions, natural or statutory, of political divisions or subdivisions.

We are impressed with the apt statement of the matter found in the dissenting opinion of Nickels, Chairman:

"The facts proven show the nature of the employment to be that of making certain repairs to a defective window.

This was an occasional or chance type of repair which does not occur with periodic regularity. The same set of circumstances will arise in the course of property ownership, regardless of the trade, business or occupation of the owner. The fact that the care and custody of the county court house was entrusted to its board of supervisors by statute, does not make the repairs a part of the trade or business of the county. The repairs being made were nothing more than an incident to keeping the court house in condition.

"The expression 'trade, business or occupation' in Section 2(b) relates primarily to business operations of persons and private corporations rather than to the administrative functions of a political subdivision of the State.

"The county is most certainly not in the repair business. The nature of the work performed related to the protection of the court house from deterioration as an incident to ownership but not as an administrative function. The expression, 'Trade, business or occupation' apparently does not apply to political subdivisions because they are not specifically included therein by the language of the Act."

Is a county, or any political subdivision, as such, engaged in a trade, business, occupation or profession, the usual course of which would be found in the occasional repair of its public buildings? To ask the question is to answer it. Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation. The word "trade" signifies barter and exchange, not restricted to commodities, but including transactions involving the medium of money. "Occupation" is that activity in which a person, natural or artificial, is engaged with the element of a degree of permanency attached. "Profession" is the method or means pursued by persons of technical or scientific training. The word "business" implies some constant and connected employment as distinguished from "an isolated act or two." We cannot accept the notion that the legislature meant to apply these trade words to political entities, however fervently we may be urged to do so.

■ We find nothing in the opinion in the case of *Hoffer Bros.* v. *Smith,* 148 Va. 220, 138 S. E. 474, to disconcert this view. In that case, this is said:

"The test is the nature of the employment and not the nature of the contract. An employment cannot be said to be casual where it is in the usual course of the trade, business or occupation of the employer. But it is casual when not permanent or periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business."

■ The Virginia Workmen's Compensation Act, adopted in 1918, is practically a copy of the Indiana Act. The judicial construction placed upon that Act in that State will be considered to have been adopted in this State. *Big Jack Overall Co.* v. *Bray,* 161 Va. 446, 171 S. E. 686.

The following is a citation from the opinion in the case of *Hoffer Bros.* v. *Smith, supra:*

"In *Bailey* v. *Humrickhouse,* 83 Ind. App. 497, 148 N. E. 428, the court held that claimant was a farm laborer. In the course of its opinion, the court said: 'Even if it be conceded that the appellee was not a farm laborer in the performance of the work in which he was engaged when injured, and whether he was the employee of appellant or of the son-in-law, still he was not entitled to compensation under the compensation act, for he was clearly but a casual employee. When he had finished the odd jobs that appellant had for him to do, he was paid for his services, and had been told by appellant that he did not know that he had any more work for him. Thereupon, appellant went on a trip to Ohio. About two weeks afterwards, and upon appellant's return, appellee again made application for work, when he was given a one day's job on the garage, and during its performance he was injured. Certainly it must be said that such an employment, whether by appellant or the son-in-law, was both casual, and not in the usual course of the trade, business, occupation or profession of the employer.' "

■ Speaking of the word "casual" it is said in Corpus Juris Secundum, Vol. 14, page 27, " * * * It has been said

that the word imports impermanence, * * *. 'Casual' has been contrasted with, or distinguished from, 'causal', 'constant', 'important', 'material', 'regular', and 'stated'; and also contrasted with the phrase 'of a casual nature'."

The workmen's compensation act of the state of Massachusetts is very like our own. That act was construed in *Olsen's Case,* 252 Mass. 108, 147 N. E. 350. It was said: "The employee cannot recover unless at the time of the injury he was engaged in the usual and ordinary business of the T. E. Reed Company, as distinguished from occasional and incidental work."

The order of the Industrial Commission must be reversed because the claimant was a casual employee and the employment was not in the usual course of the trade, occupation, business or profession of the employer, and hence the injury to the claimant is not compensable under the law.

*Reversed.*

HUDGINS, J., concurring in results.

SPRATLEY, J., dissenting.

The proper decision of this case depends upon the construction to be placed upon paragraph a, section 2 and paragraph b, section 2, and sections 8 and 15 of the Virginia Workmen's Compensation Act, Virginia Code 1936, chapter 76A, section 1887(1) *et seq.*

The pertinent provisions of the foregoing sections are:

" 'Employers' shall include the State and any municipal corporation within the State or any political division thereof, * * * using the service of another for pay." (Section 2 (a)).

" 'Employee' shall include every person, * * *, in the service of another under any contract of hire * * *, except one whose employment is not in the usual course of the trade, business, ocupation or profession of the employer; and *as relating to those so employed by the State the term 'employee' shall include * * * ; as relating to municipal cor-*

*porations and political divisions of the State, the term 'employee' shall include all officers and employees thereof, except such as are elected* by the people or elected by the council, or other governing body of said municipal corporation or political division, who act in purely administrative capacities and to serve for a definite term of office. * * * " (Section 2 (b)). *Italics ours.*

"Neither the State, nor any municipal corporation within the State, nor any political subdivision thereof, nor any employee of the State or of any such corporation or subdivision shall have the right to reject the provisions of any act relative to payment and acceptance of compensation; * * * ." (Section 8.)

"This Act shall not apply to common carriers * * * nor to casual employees, farm laborers * * *," etc. (Section 15.)

In *Hoffer Bros.* v. *Smith,* 148 Va. 220, 138 S. E. 474, decided in 1927, in construing subsections 2 (b) and 15, we adopted the same construction as that placed by the courts of Indiana upon the Workmen's Compensation Act of that State, upon which Act the Virginia Act was based. We construed the two sections to be in conjunction and to exclude from the benefit of the Act only those whose employment was casual and not in the usual course of the trade, business, occupation or profession of the employer. We held that the test of whether one was a casual employee was the nature of the employment and not the nature of the contract, and that an employment was not casual where it was in the usual course of the trade, business, occupation or profession of the employer.

The courts of other States have adopted divergent views in the interpretation of the phrase "casual employee," due largely to the various wordings of given statutes. Some deny the injured employee benefits if the employment is merely casual; while others refuse, as in Virginia, to deny him benefits if the casual employment is within the course of the trade or the business of the employer. *Davis* v. *Industrial Commission,* 297 Ill. 29, 130 N. E. 333, 15 A. L. R.

735; Note, 33 A. L. R. 1452; *De Carli* v. *Manchester Pub. Warehouse Co.*, 107 Conn. 359, 140 A. 637, 60 A. L. R. 1195; *Moore* v. *Clarke*, 171 Md. 39, 187 A. 887, 107 A. L. R. 924; and Schneider's Workmen's Compensation Act, (2d Ed.) section 28. *Hoffer Bros.* v. *Smith, supra.*

Here Boaz was injured in an accident which arose out of and in the course of his employment by the Board of Supervisors of Amherst county, Amherst county being a political subdivision of the State. He was under a contract of hire to perform certain work necessary in the repair of a building belonging to the county and, thus, was an employee of the county. It may be conceded that the employment of Boaz was neither permanent nor periodically regular; but was occasional or by chance and, in that sense, merely of a casual nature. However, to deprive Boaz of the benefit of the Act, under the construction heretofore placed upon it, it is necessary to find that his work was not performed in the usual course of the business of the employer. This we cannot well do unless we hold that the exception that the employment must be in the usual course of the business of the employer does not apply to a political subdivision, or that the work performed by Boaz was not in the usual course of the business of his employer.

The Workmen's Compensation Act is highly remedial and it is to be liberally construed to effect its general purpose. Benefits thereunder are not to be denied upon a mere technical construction, and provisions of exemption are to be strictly construed. It seems to me clear that the Act shows a legislative intent to apply its provisions to the State and its political subdivisions, as well as to individuals and private corporations, not only by the express language of sections 2(a) and 2(b), but by section 8, which latter section denies the State and its political subdivisions the right to reject its provisions.

In *Hoffer Bros.* v. *Smith, supra,* it is said: "The general purpose of the workmen's compensation act was to provide a compensation for all employees injured in the usual course of the employer's business. Section 2 fully protects this

class of employees. To make certain that those whose employment is not in the usual course of the trade, business or occupation of the employer shall not receive compensation, it is provided in section 15 that the act shall not apply to 'casual employees,' that is, employees engaged in a casual employment."

The express language of sections 2(a) and 2(b) clearly shows the legislative intent to apply the provisions of the Act to the State and its political subdivisions, and section 8 denies them the right to reject its provisions.

To hold that the terms "except one whose employment is in the usual course of the trade, business, occupation or profession of the employer," bear no relation to the functions of the State or its political divisions, is to ignore entirely the second and third provisions of section 2(b).

In the definition of the word "employee," no distinction is made between employees of the State or its political divisions and private corporations or individuals, except where the employee of the State or its political division is elected or performs a duty in an administrative capacity. The employee of either class of employers must be one whose employment is in the usual course of the business of the employer. If he is not so engaged, the employee is not entitled to the benefits of the Act. The exclusion of workmen not employed in the usual course of the business of the employer was intended to protect the State and its political divisions, as well as private employers. To make a distinction otherwise would seem to be contrary and violative of both the letter and spirit of the Act, which gives all "employees" as therein defined and limited the same status.

It seems to me that it cannot be reasonably held that an extra laborer employed by a city or county for work on an emergency job to repair a public sewer is not entitled to the benefits of the Act, while an extra man, similarly employed by an individual or private corporation, engaged in building and operating sewer systems, is entitled to its benefits.

It seems to me that a proper construction of the Act restricts the present inquiry to the question whether Boaz was an employee in the usual course of the business of the Board of Supervisors. If the labor undertaken by him was a part of his employer's usual business, then he is entitled to the benefit of the Act; otherwise he is not.

In Virginia, a county is a political subdivision of the State. The board of supervisors constitutes the governing body of the county, and is specifically charged by law with the performance of certain duties. Among the duties required are the following:

"The board of supervisors shall have power * * * to make such orders as they deem expedient concerning such corporate property as now exists or which may hereafter be acquired; * * *." Section 2723.

"The board shall have power to build and keep in repair county buildings." Section 2725.

"The board of supervisors shall have power to direct the raising, by levy, of such sums as may be necessary to defray the county charges and expenses and all necessary charges incident to or arising from the execution of their lawful authority. * * * " Section 2727.

"The board shall * * * have the care of the county property and the management of the business and concerns of the county, * * * ." Section 2728.

"There shall be provided by the board of supervisors of each county * * * a court house, clerk's office and jail, the costs thereof, and of the land on which they may be, and of keeping the same in good order, shall be chargeable to the county. * * * ." Section 2854.

Section 2865 provides that if a board of supervisors does not perform its duty to keep the court house in repair or otherwise sufficient, the circuit court may, by mandamus, compel it to make such repairs as may be necessary.

In this day and generation, it is generally conceded that government, national, state and local, constitutes the largest and most important business interest. The business of government regulates not only the conduct of men, but pro-

vides almost every manner of public use, safety and convenience. Especially applicable to this case is the specific duty imposed under section 2728 that "The board (of supervisors) shall * * * have the care of the county property and the management of the business and concerns of the county, * * * ." This duty is constant and continuous. It is a duty as mandatory and as necessary as that of levying taxes, building sewers and roads or otherwise providing public service for the county. It is a duty such as occurs in ordinary practice, in the ordinary course of events, and is, therefore, a usual duty, service, business or part thereof. The duty to make repairs to county property is no less a duty than that of levying taxes, building court houses, jails and roads. The duty is continuous, although the necessity may be occasional. It is the duty rather than the necessity which is determinative.

The preparation of the budget for the county and the levying of taxes is a part of the usual business of a board of supervisors, although such duty occurs, ordinarily, periodically, that is, once a year. In the usual and ordinary course of events, decay is inevitable while breakage will take place from time to time. If repair of these buildings is not within the business of the governing body of the county, then one wonders whose business it can be.

The use of the words "trade, business, occupation or profession" manifestly are intended to include the duty, mission or service of the agency charged with the performance. It is "that which one has to do or should do." Webster's International Dictionary (2d Ed.). It usually means "such as occurs in ordinary practice or in the ordinary course of events; customary; ordinary; habitual." Webster's International Dictionary (2d Ed.).

I conclude that when the provisions of the Act, sections 2(b) and 15 are construed to be in conjunction, as in Virginia, there is excluded from its benefit only those whose employment is casual and not in the usual course of the business of the employer. If the construction we have heretofore placed upon what constitutes a casual employee is not to be

followed, the case of *Hoffer Bros.* v. *Smith, supra,* should be reversed by this court, or the legislature should change the terms of the Act by appropriate action. In the absence of legislative disapproval of our construction, it seems to me we should adhere to our former views.

GREGORY, J., concurs in this dissent.