## CIRCUIT COURT OF THE CITY OF RICHMOND

Thomas L. Wilmouth

v.

Gordon T. Reardon

January 28, 1993

Case No. LR-2581

BY JUDGE ROBERT L. HARRIS, SR.

On November 3, 1992, a hearing was held in this case in which the primary subject matter was the susceptibility of the Defendant, Gordon T. Reardon, to the Virginia Workers' Compensation Act and his obligations, if any, under that act. However, the exact posture of this case at the time of that hearing is unclear. While, apparently, the hearing was scheduled for the Court to consider the Plaintiff's Motion for Partial Summary Judgment, filed on May 11, 1992, the issues involved in that motion are intertwined with those involved in earlier pleadings by both parties. On August 1, 1991, and October 17, 1991, respectively, both the Defendant and the Plaintiff filed memoranda in support of their differing workers' compensation arguments, apparently in anticipation of a hearing scheduled for October 22, 1991. The Defendant argued that he, or his corporate entity, Gordon Developers, Inc., was the statutory employer of the Plaintiff and that, therefore, the latter's exclusive remedy was the Workers' Compensation Act; thus, the Court lacked subject matter jurisdiction to hear this common law tort suit. Conversely, the Plaintiff argued that he was either the Defendant's common law employee or statutory employee, but that in either case, the Defendant's failure to obtain workers' compensation insurance made him susceptible to a common law suit without recourse to certain common law defenses. Later, in his Motion for Partial Summary Judgment, argued at the November 3, 1992, hearing, the Plaintiff asked the Court to find that he was an "employee of [Defendant] Gordon T. Reardon at the time of [his] injury" and that "Gordon T. Reardon [was]

subject to the Virginia Workers' Compensation Act at the time of [Plaintiff] Thomas Wilmouth's injury."

At the November hearing, counsel for the Defendant concentrated on the question of whether or not Gordon T. Reardon was the proper defendant in this case since Reardon largely handled his business transactions through a corporate entity known as Gordon Developers, Inc. Counsel for the Defendant apparently felt that if a suit could be maintained against Gordon Reardon, in his individual, non-corporate capacity, then it would simply be a suit in common law tort, without implication of any of the provisions of the Workers' Compensation Act. However, the admissions of Reardon, both in his deposition[1] and in his testimony at the November hearing, are sufficient to allow a "piercing" of the corporate veil. Indeed, those admissions indicate that little, if any, veiling of the Defendant's individual assets was intended when the corporate entity was established. Gordon Reardon admitted that the corporation had no capitalization, serving only to allow him to maintain business records and to obtain certain price advantages from suppliers which would not be available to him as an individual. Consequently, all payments for work or materials were made from Reardon's own personal funds with the corporation providing only a conduit for those payments. Accordingly, because Gordon Developers, Inc., was merely a paper corporation, otherwise indistinguishable from Gordon T. Reardon, the Court finds that Gordon T. Reardon is the proper Defendant. *Cf. Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987) (court rules that, in order to pierce a corporate veil, a plaintiff must show that the corporation was the *alter ego* of an individual or individuals and that legal recognition of the separation between the individuals and the corporate entity would work an injustice).

In addition to the finding that Gordon Reardon is the proper Defendant in this case, the Court also finds that he was the statutory employer of the Plaintiff, Thomas Wilmouth. Unfortunately, for the Plaintiff, the result of these findings is not as he anticipated. Because Gordon Reardon is the statutory employer of the Plaintiff, the latter's

---

[1] For the purposes of the initial Plea of Workers' Compensation, filed in 1991, both parties agreed, pursuant to § 8.01–420 of the Code of Virginia, that oral depositions could be considered by the Court in addressing that Plea and both sides have continued to urge the Court to consider those depositions in considering the rulings currently before the Court.

sole remedy for an injury arising out of and within the scope of his employment is the Workers' Compensation Act. The "penalty clause" which may be utilized by employees against non-compliant employers has no application here. *See* Va. Code Ann. § 65.2–805 (1991) (allowing an employee whose employer has failed to comply with the provisions of the Workers' Compensation Act to sue the employer at common law and denying that employer the use of the common law defenses of Assumption of Risk, Contributory Negligence or the Fellow Servant Rule.)[2]

The critical question before the Court was the nature of the employment relationship between the Plaintiff, Thomas Wilmouth, and the Defendant, Gordon Reardon. *See, Stover v. Ratliff,* 221 Va. 509, 511–12, 272 S.E.2d 40, 42 (1980) ("[W]hether there exists a relationship of master and servant, rather than one of independent contractor or subcontractor, is a question of law and not of fact."). To answer that question, the Court had to ascertain the relationships between certain other persons who played roles in this case.

Gordon Reardon owned certain property in need of renovation and, during 1988 and 1989, was involved in at least two active renovation projects. The Plaintiff, Wilmouth, worked briefly on one of those projects, located on Broad Street, and was injured in the course of that employment. Wilmouth was not directly hired by Reardon but was brought onto the project by Bruce Whiteside who, in 1988, had entered into an oral contract with Reardon to perform certain carpentry work on both projects. The Plaintiff, in his Amended Motion for Judgment, characterizes Whiteside as the "agent" of Reardon. The effect of this characterization would be to make Whiteside an "employee" of Reardon, a portrayal in which Whiteside joins by describing himself as Reardon's "superintendent." Were Whiteside an employee/superintendent, then, the argument goes, those persons he employed and supervised on behalf of Reardon would also be Reardon's employees. *See, Nolde Bros., Inc. v. Chalkley,* 184 Va. 553, 562, 35 S.E.2d 827, 831 (1945) ("The rule is well settled that a person who is procured by an employee . . . to assist him in his duties, the employer assenting to the arrangements, occupies the position of an employee and that the duty owed him by the employer is the same as that owed to other employ-

---

[2] At the time this suit arose, the substance of this section was found at § 65.1–106, but Title 65.1 was replaced by Title 65.2 in 1991. *See* 1991 Va. Acts 545.

ees.") (alteration in original) (citation omitted). This would have effectively given Reardon enough employees to require that he carry workers' compensation insurance. *See* Va. Code Ann. § 65.2–101(B)(8) (1992 Supp.) (formerly § 65.1–28, exempting from the Workers' Compensation Act employers with fewer than three employees in the same business within the state). Under this argument because Reardon failed either to obtain Workers' Compensation Insurance or to be certified as self-insured by the Workers' Compensation Commission, *see id.* § 65.2–801(A) (formerly § 65.1–104.1(A)), his putative employees, including the Plaintiff, could opt to sue him at common law for injuries sustained during the course of their employment. *See id.* § 65.2–805(A) (1991) (formerly § 65.1–106). Additionally, the statute would penalize the "non-compliant" Reardon by barring him from using the defenses of contributory negligence, the fellow-servant rule, or assumption of the risk. *See id.*

The Plaintiff's theory fails, however, because the evidence simply does not support the characterization of Bruce Whiteside as the employee/superintendent of Gordon Reardon.

> The right of control is the determining factor in ascertaining the parties' status in an analysis of an employment relationship. And the right of control includes not only the power to specify the result to be obtained, but the power to control "the means and methods by which the result is to be accomplished."

*Intermodal Serv., Inc. v. Smith*, 234 Va. 596, 601, 364 S.E.2d 221, 224 (1988) (quoting *Richmond Newspapers v. Gill*, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982) (citation omitted). Whiteside's self-characterization notwithstanding, *see Gill*, 224 Va. at 99, 294 S.E.2d at 844 ("'It is a truism that the name chosen by the parties to describe their relationship is ordinarily of very little importance as against the factual rights and duties they assume'.") (quoting 1C A. Larson, *The Law of Workmen's Compensation* § 46.30 (1980)), there is little evidence of Reardon exercising or retaining the "power to control" Whiteside's work necessary to cause the latter to be classified as an employee. Whiteside testified in his deposition that Reardon exercised no control over how he performed his carpentry work, and there is no evidence that Reardon sought to control the carpentry work of other workers through the "agency" of Whiteside. At most, Reardon speci-

fied the "result to be obtained," but not "the means and methods by which the result [was] to be accomplished." *Intermodal Serv., Inc.*, 234 Va. at 601, 364 S.E.2d at 224.

The relationships among the workers is somewhat blurred by the fact that their compensation primarily, if not entirely, came from Reardon through Whiteside. Apparently, on a weekly basis, Whiteside would report to Reardon the number of man hours worked during the week, and Reardon would pay Whiteside an amount equal to $15.00 per man hour. These funds would provide the compensation for the workers, reimburse Whiteside for certain materials purchased, and provide additional compensation for Whiteside. The Plaintiff asks the Court to accept Whiteside's characterization of this arrangement, that of the "superintendent" paying Reardon's employees. However, a more reasonable interpretation is that urged by the Defendant, and essentially conceded by Whiteside, that the $15.00 per man hour charged was simply considered an amount above that contemplated by the original contract between Whiteside and Reardon, in other words, a cost overrun.

While Whiteside did supervise certain workers, he did so in his own capacity, not as an "agent" of Reardon. The one worker ever fired on the projects was fired by Whiteside, primarily for incompetence as a "finish carpenter," although he was then directly re-hired by Reardon to stain some doors, a capacity all concede was independent from Whiteside. Any other hiring, with respect to carpentry, was done by Whiteside, although at times, as project costs rose, he would seek Reardon's approval before hiring additional workers at additional cost.

The Plaintiff testified, in his deposition, that all his instructions came either from Whiteside or Paul Bonnoccelli, an old friend of Whiteside. Bonnoccelli had accompanied Whiteside to the latter's initial meeting with Reardon to discuss a contract, and when Whiteside started working under his oral contract, Bonnoccelli worked with him. Bonnoccelli left the project after a few days, but returned the following year to assist Whiteside. After his return, Bonnoccelli was apparently paid in the same weekly manner as were others working with Whiteside. The Plaintiff, Wilmouth, was employed by Whiteside specifically to assist Bonnoccelli in some framing work. Although it is disputed whether Whiteside sought Reardon's approval prior to engaging Wilmouth, that dispute is not material, for it is clear that even if Reardon's approval

was sought, it was sought because Reardon controlled the financing, not because he controlled the workers.

Accordingly, the Court finds that the only reasonable characterization of the employment relationship between Whiteside and Reardon is that of Owner and Independent Contractor. This is in accord with similar relationships Reardon had for other phases of his renovation; he had also engaged, among others, an electrical contractor, a plumbing contractor, a demolition contractor, and an architect. The fact that Paul Bonnoccelli, who was a high-school friend of Whiteside, arrived with Whiteside when the latter first spoke with Reardon about employment strongly suggests an association between Whiteside and Bonnoccelli rather than Reardon and Bonnoccelli. The degree of control exercised by Whiteside over Bonnoccelli causes the Court to characterize that association as one of employer and employee. The ease with which Bonnoccelli apparently temporarily disappeared from the scene after working only a few days may demonstrate a casual employee-employer relationship, at least at the outset, but it is an employee-employer relationship nonetheless.[3] As a result, the Court finds that the Plaintiff, Thomas Wilmouth, hired by Whiteside to assist Bonnoccelli in his work, supervised by both Whiteside and Bonnoccelli, paid by Whiteside from funds received from Reardon, was not Gordon Reardon's employee, but rather was Bruce Whiteside's employee.

This, however, does not end the inquiry. The Plaintiff additionally argues that, even if he was not Reardon's common law employee, he falls within the definition of "statutory employee."

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the

---

[3] Although "casual employees" are not covered by the Workers' Compensation Act, see Va. Code Ann. § 65.2–101(B)(5) (1991), "casualness" is less a property of timing than of the nature of the work performed. An "employee cannot recover unless, at the time of the injury he was engaged in the usual and ordinary business of the [employer], as distinguished from occasional and incidental work." *Board of Supervisors of Amherst County v. Boaz*, 176 Va. 126, 132, 10 S.E.2d 498, 500 (1940) (citation omitted).

work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code Ann. § 65.2–302(A) (formerly § 65.1–29). The purpose of this section is to provide protection to workers who, although not "employees" in the master-servant sense, are engaged in the sort of work for an "owner" which would otherwise have to be undertaken by the owner's actual employees.

> Code § 65.1–29 contemplates that an owner may perform or execute work that is part of his trade, business, or occupation through contractors and subcontractors, directly employing no workers for the purpose; if the work performed by an employee of the contractor or subcontractor is part of the owner's trade, business, or occupation, the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were his own employee.

*Smith v. Horn*, 232 Va. 302, 305, 351 S.E.2d 14, 16 (1986).

It is undisputed that the work involved in the instant case was a part of the Defendant's trade or business, building renovation. Since the Court has ruled that Gordon Reardon contracted with Bruce Whiteside to carry out a portion of that work and that the Defendant, Thomas Wilmouth, was Bruce Whiteside's employee, the Plaintiff was a statutory employee of Gordon Reardon as contemplated by § 65.2–302(A). However, the effect of that classification is not that urged by the Plaintiff.

The Plaintiff concedes that, under normal circumstances, a statutory employee may not maintain a common law suit against his statutory employer for injuries sustained during the course of his employment. *See Ford v. City of Richmond*, 239 Va. 664, 669, 391 S.E.2d 270, 273 (1990) ("As an owner performing such work through an independent contractor, the City was Ford's statutory employer, and Ford's exclusive rights and remedies for the 'injury by accident . . . arising out of and in the course of the employment' were those granted by the [Workers' Compensation] Act."); *see also, Evans v. Hook*, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990) ("[E]ven though they are independent contractors and are not the injured employees' common law employers, [statutory employers] are under the canopy of the [Workers' Com-

pensation] [A]ct and entitled to the immediate employers' statutory immunity from common law actions . . . ."). However, the Plaintiff argues that § 65.2–302(A) requires statutory employers to carry workers' compenstion insurance and that failure to do so creates a violation of the Workers' Compensation Act which opens the statutory employer to common law suit pursuant to § 65.2–805(A) with the full penalty of that section applying. Accordingly, the Plaintiff argues that he not only can maintain this suit in tort, but that the Defendant will be denied use of the defenses of contributory negligence, assumption of the risk, or the fellow-servant rule. *See* Va. Code Ann. § 65.2–805(A). This, however, is a misreading of the law.

The language of § 65.2–805(A) merely obligates a statutory employer to provide compensation, as provided by the Workers' Compensation Act, for statutory employees. It does not require that statutory employers carry workers' compensation insurance simply because they are statutory employers. Thus in *Smith v. Weber*, 3 Va. App. 379, 350 S.E.2d 213 (1986), a contractor appealed an award of the Industrial Commission to an employee of a subcontractor. The contractor argued that because he had fewer than three employees, he was not liable to the statutory employee under the Workers' Compensation Act. *See id.* at 381, 350 S.E.2d at 214. In rejecting this argument and upholding the award, the Virginia Court of Appeals considered the total number of statutory employees in order to bring the contractor within the obligations of the Workers' Compensation Act. *See id.*, 350 S.E.2d at 214. However, in so ruling, the court is undisturbed by the admission of the contractor that he carried no workers' compensation insurance, *see id.* at 380, 350 S.E.2d at 213, referring only to the financial obligations imposed on statutory employers by the Workers' Compensation Act. *See id.* at 382–83, 350 S.E.2d at 214. Similarly, had the Plaintiff in the case at bar brought his claim to the Industrial Commission, Gordon Reardon, as the statutory employer, would have been obligated to pay any compensation awarded. *Cf. Delp v. Berry*, 213 Va. 786, 789, 195 S.E.2d 877, 879 (1973) (court rules that plaintiff able to maintain common law suit against uninsured *employer*, despite prior award by Industrial Commission because the plaintiff had been unable to collect his award from his employer).

It is true that often statutory employers do carry workers' compensation insurance. However, that is because they have the requisite number of actual employees, not because of a corresponding status as

statutory employers. Thus, in the case cited by the Plaintiff in support of his view of the statutory employer's legal obligations, *Baldwin v. Wrecking Corp. of America*, 464 F. Supp. 185 (W.D. Va. 1979), the statutory employer of the plaintiff, a general contractor, actually carried workers' compensation insurance. The defendant, the plaintiff's actual employer, carried no such insurance but attempted to avoid any liability by arguing that since the statutory employer carried insurance, the plaintiff's sole remedy remained the coverage provided by the general contractor. The court disagreed, ruling that the penalty clause of then § 65.1–106 could be used by the plaintiff in his suit against his actual employer. *See id.* at 189. However, despite the fact that the district court describes the general contractor as "a statutory employer who has complied with the [Workers' Compensation] Act," *id.* at 188, this does not reflect a requirement that statutory employers carry workers' compensation insurance. In giving some background history of the case, the *Baldwin* court notes that the general contractor obtained insurance covering itself "not only . . . *as an employer*, but also covering Wrecking Corporation as an additional insured . . . working in the same trade as and working as a subcontractor for [the general contractor]." *Id.* at 187 (emphasis added).

In *Ford v. City of Richmond*, 239 Va. 664, 391 S.E.2d 270 (1990), the defendant was not the actual employer of the plaintiff's decedent, but the statutory employer. Like the defendant in *Baldwin*, the City of Richmond presumably held workers' compensation insurance because it utilized actual employees, not because of liability to potential statutory employees. However, in ruling that the plaintiff's wrongful death action against the statutory employer was barred by the exclusivity provisions of the Workers' Compensation Act, *see id.* at 669, 391 S.E.2d at 273, there was no need for the Virginia Supreme Court to address the insurance issue because "compliance" with the Workers' Compensation Act by statutory employers required the payment of compensation, not the carrying of workers' compensation insurance, as is required of common law employers. *Compare* Va. Code Ann. § 65.2–101(B)(8) (exempting from the definition of covered employees those working for *employers* with fewer than three employees) and § 65.2–801(A) (requiring *employers* subject to the Workers' Compensation Act to carry workers' compensation insurance or be certified as self-insured) *with* Va. Code Ann. § 65.2–302(A) (requiring an *owner* who subcontracts out work within their trade, business, or occupation

to pay to *employees* of subcontractors "any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him").

Accordingly, the Court finds that it is of no significance in the instant case that the Defendant, the statutory employer of the Plaintiff, carried no workers' compensation insurance. *Cf. Betts v. Kempers*, 745 P.2d 283 (Colo. Ct. App. 1987) (homeowner who carried no specific workers' compensation insurance, although his homeowner's liability insurance provided some coverage for workers' compensation liability, he became "legally obligated" to pay, was immune, as statutory employer, from common law suit by employee of independent contractor). Section 65.2–302(A) of the Workers' Compensation Act obligates Gordon Reardon to provide compensation for certain work-related injuries incurred by his statutory employees, *see* Va. Code Ann. § 65.2–302(A) (formerly § 65.1–29), and § 65.2–307 provides that this compensation is their exclusive remedy. *See id.* § 65.2–307 (formerly § 65.1–40); *see also, Ford v. City of Richmond*, 239 Va. 664, 669, 391 S.E.2d 270, 273 (1990); *Evans v. Hook*, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990). Therefore, because the Court lacks subject matter jurisdiction, it will enter an Order dismissing the Plaintiff's suit.