714

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

COMMONWEALTH OF VIRGINIA V. JOHN M. HUGHES.

January 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*Sinnott & May,* for the plaintiff in error.

*P. A. L. Smith, Jr.,* and *James C. Page,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an appeal from the Industrial Commission of Virginia which found for the complainant, John M. Hughes.

He was employed in road building near Columbia, Virginia, and was dumping dirt from a truck when hurt. Childs, a witness present, said:

"Q. Now, can you describe just the movements of the body of the truck, what he did and what happened? Stand there and show the Commissioner.

"A. He was standing up and had hold of the side of the body. The dirt was coming out and we were lifting it up and the truck jerked and he fell back.

"Q. They started the truck up and he fell back?

"A. Yes, sir, it jerked him and he lost balance."

To the same effect is the evidence of claimant. "I was lifting on the truck body and the truck snatched up and throwed me backward on the ground."

He tried to work after he fell, but had to quit because of a severe pain on the right side of his abdomen, and was then, as he expressed it, "the sickest patient you ever saw." Before that time his health had been good. William Dunn drove the truck. He said that Hughes was immediately taken to Mosby's drug store, where the doctor's office was, and "seemed to be bad off." From the drug store he was taken to his home. Childs said: "He scuffled up and remarked that 'something pulled loose in my abdomen.' He said: 'I'm in awful misery.'"

Maywood Boggs, another witness, was asked: "What was his condition after he fell?" and answered, "He

seemed to be in very much pain. He couldn't work. He ate lunch right beside me. He started, but couldn't eat."

Dr. F. J. Clements saw Hughes in something less than two hours after he was hurt and tells us that "he was undoubtedly suffering." He found no objective symptoms "except there was rigidity of the right abdomen." He further said: "It was perfectly possible that his symptoms could have occurred from a traumatic injury and the history of the case forced me to think that it had a direct bearing in the particular instance." He was asked:

"Q. Doctor, you have heard the witnesses testify this afternoon as to what happened to Hughes in connection with this truck. Such an accident as that described could have caused the trouble that you found in the abdomen?" and answered, "I think so."

He remained in his home under the care of Dr. Clements for five days, but his condition did not improve and he was then, under the advice of that physician, who was unable to ascertain just what the trouble was, taken to a Richmond hospital for examination and treatment, where he was put under the care of Dr. E. T. Trice. A preliminary examination brought no definite conclusion. Fever set in and there was considerable evacuation of blood. The history of the case suggested the presence of strangulated hernia. Hughes consented to an exploratory operation. One was made by Dr. Trice on April 18, 1932. He found no evidence of trauma, but did find that the patient was suffering from intestinal influenza. The operation was measurably negative in results and from it the doctor said: "I consider him entirely recovered as of June 15." He further said that influenza did not call for an operation and that "it would be impossible to associate influenza with the accident. One was fifteen days ahead of the other," but that influenza might cause nausea and intestinal hemorrhages.

■■ Of course, the plaintiff in cases of this character must make out a case. That burden rests upon him as it rests upon other plaintiffs; there must be some causal

connection between the accident and those results upon which the plaintiff rests. It is further true that great weight should be given to the evidence of attending physicians. *Bristol, etc., Supply Co.* v. *McReynolds,* 157 Va. 468, 162 S. E. 8.

But such evidence is not conclusive. If it were, an erroneous diagnosis by an incompetent doctor might preclude recovery in a worthy case. The Commission, in the light of the rule stated, must pass upon it, just as the jury must pass upon the testimony of an attending physician where the competency of a testator is in issue. Trice found nothing which in any way indicated that Hughes had been hurt by this fall or by the tilting truck, but unless he is a malingerer he was hurt. His immediate suffering was great and he was to all intents and purposes totally disabled and is still too weak to work, although this doctor said that he had completely recovered from the operation by June 15. There is no suggestion that his suffering or his continued weakness could have been due to any cause other than that indicated by the evidence heretofore noted.

The Industrial Commission has found for the petitioner, and that he was hurt as he claims to have been hurt. As we have seen, there is evidence tending to support this finding, and since it is substantially supported it must in turn be supported by us.

We are controlled by the carefully considered case of *Big Jack Overall Co., et al.* v. *Bray, ante,* page 446, 171 S. E. 686, decided by us on November 16, 1933.

In the instant case, the fall unquestionably arose out of and in the course of his employment and the injury suffered was sudden and came immediately into evidence. It was not due to influenza and it was not an occupational disease, therefore a recovery must be sustained under the authority cited, and it is so ordered.

*Affirmed.*