# Richmond

LUCILLE F. BASHAM V. R. H. LOWE, INC., EMPLOYER, ET AL.

November 25, 1940.

Record No. 2341.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Thomas J. Surface* and *George W. Chaney*, for the appellant.

*Woods, Chitwood, Coxe, Rogers & Muse* and *John L. Walker*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In November, 1939, Noah J. Basham, of Roanoke, an employee of R. H. Lowe, Inc., was killed as the result of an accident arising out of and in the course of his employment. Lucille F. Basham, his 26-year-old unmarried daughter, filed a claim for compensation with the Industrial Commission of Virginia claiming that her father was her sole support, that she was physically incapable of earning a livelihood, and this condition obtained both at the time of the accident and for a period of more than three months prior thereto.

Since the physical condition of the claimant was in issue, prior to the date on which the claim was to be heard, counsel for the insurance carrier filed a motion with the Commission that the claimant be required to submit to a physical examination by Dr. W. L. Powell and Dr. John E. Gardner, of Roanoke, physicians selected by the insurance carrier and at its expense. Counsel for the claimant objected to the granting of this motion on the ground that the Industrial Commission lacked the authority, by statute or

otherwise, to compel her to submit to such an examination. Despite this objection the motion of the insurance carrier was granted and the claimant was directed through her counsel to submit to such an examination, which she did.

At the hearing the testimony was undisputed that at the time of the accident and for a year or more prior thereto the claimant's father had been her sole support.

The claimant testified that she had attended high school for two years and was a graduate of a business college, but knew no occupation except that of "clerking in a store;" that for some time prior to July, 1938, she was employed in a store but on account of her health was compelled to stop work at that time; and that since she had not been physically able to do any work towards earning a livelihood. She further testified that shortly before her father's death she had tried to work for one hour a day in a confectionery shop run by her brother-in-law but had to give up this position on account of her health. After her mother's death, in August, 1939, and until her father's death in November of that year (except for a short period when she and her father lived with her married sister), the claimant had done the necessary housekeeping for her father and herself.

Specifically, the claimant testified that she has a weak heart, is unable to stand on her feet for any considerable time, runs a slight temperature, occasionally spits blood, and is highly nervous, and that this condition had obtained for at least a year immediately preceding her father's death.

The testimony of the claimant was corroborated by that of her married sister and her brother-in-law.

Dr. B. C. Moomaw, a practicing physician in the city of Roanoke for more than thirty years, testified that he had examined the claimant on January 4, 1940, that her blood pressure was low, that her pulse rate was high, that her heart shows signs of muscular weakness and enlargement, and that her lungs showed areas of calcification. His conclusion was, "This condition has existed for a year or more and probably several years, and these disabilities indicate

that she is unable to perform any gainful occupation and has been unable to do so for at least a year past."

This testimony was corroborated by that of Dr. W. O. Porter, also a practicing physician in the city of Roanoke, who examined the claimant on December 30, 1939. Dr. Porter was of the opinion that the claimant was not physically able to "work at any gainful occupation," and that "this condition must have extended over a period of five to six years or even longer."

At the hearing Dr. W. L. Powell and Dr. John E. Gardner, both reputable physicians practicing in the city of Roanoke, were offered as witnesses for the insurance carrier. Their testimony was objected to on the ground that over her previous objection the claimant had been required to submit to an examination by these physicians who had been selected by the insurance carrier. This objection was overruled and the physicians were permitted to testify.

Dr. Powell testified that while the claimant was "a little nervous" her heart and lungs were normal, and that, in his opinion, she was physically capable of resuming "her occupation as a clerk in a store, or some similar work, and it would probably be beneficial if she had some occupation of this kind." The testimony of Dr. Gardner was to the same effect and his conclusion was that "there is no reason why Miss Basham should not be able to do ordinary work."

Dr. C. H. Peterson was likewise called as a witness for the insurance carrier. He had not examined the claimant but corroborated Dr. Gardner's interpretation of the X-Ray plates taken of the claimant's heart and lungs. He expressed no opinion as to the claimant's ability or inability to work at a gainful occupation.

Upon this evidence Commissioner Nickels found that the claimant had failed by a preponderance of the evidence to establish either mental or physical incapacity from earning a livelihood and dismissed the claim. On a review before the full Commission the finding of Commissioner Nickels was affirmed and an order was entered denying

compensation and dismissing the claim. From this order the claimant has sought and obtained this appeal.

So much of section 40 of the Workmen's Compensation Act [Code 1936, section 1887(40)] as is here material reads as follows:

"The following persons shall be conclusively presumed to be the next of kin wholly dependent for support upon the deceased employee:

"(a) A wife upon a husband * * * .

"(b) A husband upon a wife * * * .

"(c) A boy under the age of eighteen, or a girl under the age of eighteen, upon a parent. If a child is over the ages specified above, but physically or mentally incapacitated from earning a livelihood, he or she shall be presumed to be totally dependent.

" * * * In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the facts as the facts may be at the time of the accident; but no allowance shall be made for any payment made in lieu of board and lodging or services, and no compensation shall be allowed, unless the dependency existed for a period of three months or more prior to the accident; * * * .

"For the purpose of this act, the dependence of a widow or widower of a deceased employee shall terminate with legal or common-law remarriage, * * * and the dependence of a child, except a child physically or mentally incapacitated from earning a livelihood, shall terminate with the attainment of eighteen years of age, or upon earlier marriage of a female child."

The appellant's first contention is that since the evidence is undisputed that she was in fact wholly dependent upon her father for support both at the time of the accident and for a period of three months prior thereto, she is entitled to compensation irrespective of whether she is physically incapacitated from earning a livelihood.

Her argument is that she is covered by this language in the statute: "In all other cases questions of dependency, in whole or in part, shall be determined in accordance with

the facts as the facts may be at the time of the accident," which makes dependency a matter of fact regardless of physical or mental condition.

■ We can not agree with this contention. Under paragraph "c" of this section a girl under the age of eighteen years is conclusively presumed to be dependent upon her parent. Under the same paragraph, if she is over that age but is "physically or mentally incapacitated from earning a livelihood," she is likewise "presumed to be totally dependent."

■■ But the last sentence of the section quoted above expressly provides that, "the dependence of a child, except a child physically or mentally incapacitated from earning a livelihood, shall terminate with the attainment of eighteen years of age, * * * ." The language is that "dependence", not "compensation", shall terminate. That is to say, a daughter who has reached eighteen years of age is no longer deemed a dependent unless she be physically or mentally incapable of earning a living. Manifestly, the language applies both to a daughter whose right to compensation accrues by reason of the death of a parent after she becomes eighteen years of age, as well as to one who reaches that age while she is receiving compensation. Both are placed on the same footing. In the one case "dependence", which carries the right to compensation, does not commence, and in the other it terminates, unless the daughter is mentally or physically disabled.

The precise question was before the court in *Srajn* v. *Tighe Coal Co.*, 83 Ind. App. 537, 149 N. E. 187, which involved a section of the Indiana statute which is practically the same as the Virginia statute. Laws Ind. 1915, ch. 106, section 38, as amended by Laws 1919, ch. 57. The first part of the Indiana statute provides that certain designated parties shall be conclusively presumed to be dependent. It then provides that "in all other cases" the question of dependency is one of fact. The statute concludes, as does the Virginia statute, with a proviso to the effect that the "dependence of a child," except one physically or mentally in-

capacitated from earning a livelihood, "shall terminate with the attainment of eighteen years of age."

In that case there were two children over eighteen years of age and one seventeen years old. All three proved that they were in fact dependent upon their deceased parent. They were neither physically nor mentally incapacitated from earning a livelihood. The Indiana Commission denied compensation to the children over eighteen and awarded it to the child under eighteen, but expressly provided that when the latter attained the age of eighteen years compensation should cease. This decision was affirmed by the Indiana court.

The claimants in that case made the same argument which the claimant is advancing here. The Indiana court held, however, that since the statute expressly provided that the dependence of a child, unless physically or mentally incapacitated, terminated upon the attainment of eighteen years, the two children who were over that age at the time of their father's death and who were not physically or mentally incapacitated from earning a livelihood were not entitled to compensation.

This holding was expressly approved in the later case of *Carter* v. *Templeton Coal Co.*, 86 Ind. App. 175, 156 N. E. 518, in which an unmarried daughter, thirty-six years old, who was neither physically or mentally incapacitated, was denied compensation although she was in fact dependent upon her deceased father. See also, *Public Service Co. of Indiana* v. *Wiseman,* 102 Ind. App. 640, 4 N. E. (2d) 568.

 The holding of the Indiana court is peculiarly persuasive with us because the Virginia act is based upon that of Indiana. *Hoffer Bros.* v. *Smith,* 148 Va. 220, 227, 138 S. E. 474; *Big Jack Overall Co.* v. *Bray,* 161 Va. 446, 454, 171 S. E. 686; *Cohen* v. *Cohen's Department Store,* 171 Va. 106, 110, 198 S. E. 476.

We have been pointed to no decision nor have we been able to find any in which it is held, under a statute similar to ours, that a daughter over the age fixed for the termination of "dependence", unless physically or mentally in-

capacitated, should be paid compensation for the death of her parent.

In *Janesville Sand & Gravel Co.* v. *Industrial Commission,* 197 Wis. 421, 222 N. W. 317, 62 A. L. R. 156, a fifty-one-year-old single daughter, who was not incapacitated but had remained at home all of her life and had kept house for her father who was her sole support, was allowed compensation under the Wisconsin statute. But in that statute there is no provision, as in ours, that dependence of a single daughter shall terminate upon her reaching a specified age.

The same is true of the other cases relied on by the claimant. See *Utah Galena Corp.* v. *Industrial Commission,* 78 Utah 495, 5 P. (2d) 242; *Imperial Brass Mfg. Co.* v. *Industrial Commission,* 306 Ill. 11, 137 N. E. 411, 26 A. L. R. 161; *Fordson Coal Co.* v. *Lewis,* 266 Ky. 70, 98 S. W. (2d) 63.

Our conclusion, then, is that the claimant, being more than eighteen years of age at the time of the accident, is not under our statute entitled to compensation for the death of her father, upon whom she was in fact solely dependent, unless she was physically or mentally incapacitated from earning a livelihood at the time of the accident and for a period of three months or more prior thereto.

This brings us to the next contention of the claimant that the Commission erred in admitting the testimony of the two physicians to whom she had been compelled to submit for an examination over her objection, and that when this testimony is excluded the record shows by undisputed evidence that she was at the date of the accident and for a period of three months prior thereto physically incapable of earning a livelihood and was, therefore, entitled to compensation.

There is no express provision in the Workmen's Compensation Act providing for the physical examination of an alleged dependent of a deceased employee.

Section 64 of the Workmen's Compensation Act [Code 1936, section 1887(64)] provides that, "The Commission, or any member thereof, may, upon the application of either

party or upon its own motion, appoint a disinterested and duly qualified physician or surgeon to make any necessary medical examination of the employee and to testify in respect thereto." In terms this does not include the claimant since she was not an "employee".

The question then arises, Did the Commission, in the absence of statute, have the inherent power to require the claimant here to submit to an examination by physicians selected by the insurance carrier?

Whether a court, in a personal injury action, has inherent power to require the plaintiff to submit to a physical examination by physicians and surgeons is a question on which the authorities are in hopeless conflict. See Wigmore on Evidence, 3d Ed., Vol. III, section 2220, pp. 190, etc.; 17 Am. Jur., Discovery and Inspection, section 55, p. 38; 51 A. L. R. 184; 108 A. L. R. 142; 23 L. R. A. (N. S.) 463.

The Supreme Court of the United States has taken the view that in the absence of statute the court has no inherent power to require such an examination. This is on the principle that the doctrine of inviolability of the person prohibits such examination. See *Union Pacific R. Co.* v. *Botsford,* 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734; *Camden, etc., Ry. Co.* v. *Stetson,* 177 U. S. 172, 20 S. Ct. 617, 44 L. Ed. 721. This rule has been followed by the highest courts of a number of States. See 17 Am. Jur., Discovery and Inspection, section 56, p. 41.

■ "According to the great weight of authority in this country, however, which is also distinctly the modern trend, trial courts, in actions to recover damages for personal injuries, have an inherent, discretionary power to order a reasonable physical examination of the plaintiff to be made before trial by competent physicians and surgeons whenever such examination is necessary to ascertain the nature, extent, or permanency of the alleged injuries." 17 Am. Jur., Discovery and Inspection, section 55, p. 39. See Wigmore on Evidence, 3d Ed., Vol. III, section 2220, pp. 190, etc.

The reason most frequently advanced in support of the right to require a physical examination is that it tends to prevent the perpetration of frauds for feigned personal injuries.

While in some cases plaintiffs have been required to submit to examinations by physicians selected by the defendant, the better rule is that unless consent is given by the plaintiff, the court should, upon application of the defendant and after reasonable notice to the plaintiff, name some disinterested physician or physicians to make the examination. Wigmore on Evidence, 3d Ed., Vol. III, section 2220, pp. 206, 207. This was the conclusion reached by us in *Tugman* v. *Riverside & Dan River Cotton Mills,* 144 Va. 473, 495, 132 S. E. 179.

We are fortified in this view by the fact that section 64 of the Workmen's Compensation Act (Code 1936, section 1887(64)), *supra,* authorizes the Commission, or any member thereof, upon the application of an interested party, to appoint a "disinterested and duly qualified physician or surgeon" to make a necessary medical examination of the "employee". The conclusion we have reached applies this statutory rule to an examination of a claimant who is not an employee.

Of course, the request for such examination must be timely. In *C. D. Kenny Co.* v. *Solomon,* 158 Va. 25, 28, 163 S. E. 97, we held that it was not error to deny the motion for an examination of the plaintiff made five days after the trial.

Applying these principles to the instant case we think that the Commission did not have the right, over the objection of the claimant, to require her to submit to a physical examination by physicians selected by the defendant. If an examination was necessary, it should have been ordered to have been made by a physician who was selected by the Commission, and who was in that sense "disinterested" or impartial, and not by one selected by either party.

By what has been said we do not mean in any way to reflect upon the character of the physicians selected by

the insurance carrier and who testified here. There is nothing to indicate that their testimony was in any way dishonest or unduly biased or prejudiced. But a physician selected, employed and paid by either the plaintiff or the defendant is not "disinterested" or impartial within the meaning here intended. *Mattison's Case* (Mass.), 25 N. E. (2d) 157, 158.

At the oral argument before us some suggestion was made that the claimant had consented to an examination by Dr. Gardner, whom she had previously consulted.

In the letter to the Commission moving for an examination of the claimant, counsel for the insurance carrier wrote that Mr. Surface, counsel for the claimant, had agreed to the examination by Dr. Gardner, provided this was satisfactory to the claimant; but that after Mr. Surface had conferred with the claimant he had advised counsel for the insurance carrier that she would not consent to this examination.

Upon the receipt of a copy of this letter Mr. Surface promptly wrote the Industrial Commission that the claimant was unwilling to submit to this examination. Clearly, then, there was no waiver on the part of the claimant of her right of immunity from this examination.

Since the Commission had no authority to require the claimant, over her objection, to submit to an examination by physicians selected by the insurance carrier, it erred in permitting these physicians to testify as to the result of their examinations.

When the testimony of these physicians is excluded the uncontradicted evidence is that the claimant was physically incapable of earning a livelihood at the time of the accident to her father and for more than three months prior thereto. Therefore, she is entitled to compensation as a dependent of the deceased employee. The contrary finding of the Commission is without evidence to support it and must be reversed. *Scott* v. *Willis*, 150 Va. 260, 263, 142 S. E. 400; *National Surety Co.* v. *Rountree*, 152 Va. 150, 160, 147 S. E. 537.

Since it is stipulated in the record "that the average weekly wage was such as would yield the maximum compensation benefits if this be found a compensative case," the order appealed from is reversed and the cause is remanded to the Commission with directions that the claimant be awarded proper compensation.

*Reversed and remanded.*