## Richmond

VIRGINIA ELECTRIC AND POWER COMPANY v. EDWARD C. QUANN.

June 13, 1955.

Record No. 4379.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Gay, Moore & Powell; T. Justin Moore, Jr., Francis V. Lowden, Jr.* and *E. Milton Farley, III*, for the appellant.

*S. Page Higginbotham* and *Vance M. Fry*, for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

This appeal presents for review an award of the Industrial Commission against the Virginia Electric & Power Co., hereinafter designated employer, in favor of Edward C. Quann, hereinafter designated claimant.

█ The first question presented is whether the evidence supports the Commission's finding that claimant sustained an "injury by accident . . . arising out of and in the course of the employment", within the meaning of Code Sec. 65-7.

The pertinent evidence on this issue is that claimant had been employed by the Virginia Electric & Power Company since March, 1948, as a lineman helper. His duties required him to assist in loading and unloading trucks which transported electric wires from a warehouse in Orange to places in surrounding territory where needed. Within the next five years he sustained several injuries to his back, for some of which he received compensation. On July 28, 1952, while spiking an electric pole he ruptured a disc in the 4th lumbar interspace. This necessitated an operation and removal of the disc on October 27, 1952, for which he received compensation. Eight days after returning to regular work he injured his back again and lost eight days from work. These several injuries within the course of a few years weakened his back and predisposed him to injury.

On December 14, 1953, claimant in the course of his employment was helping to lift a coil of wire from the ground onto the bed of a truck, when he claimed he sustained the injury in question. The coil of wire was three feet in diameter and weighed 159 pounds. The coil had been broken and some wire used from it on a previous job. In retying the coil it was not tied tightly and some of the wire was loose. His fellow worker and superior had hold of the top of the coil. Claimant stooped and grasped the coil at the ground and then together they lifted it onto the truck. As the bottom of the coil was six to eight inches from the ground the wire unexpectedly shifted or tilted, thereby throwing a greater part of the weight upon and putting an unexpected strain upon claimant. He stated that at this moment he hesitated maybe a second and "felt something pop or make a definite snap in my back." He exclaimed "I have hurt my back."

Claimant reported his injury to his foreman, but continued to work the remaining few hours of that day. On the next day his back was paining him so badly that he was unable to work. He consulted Dr. David H. Miller in Orange, Virginia, a general practitioner, who examined him and sent him to see Dr. W. Gayle Crutchfield, a neurosurgeon, of Charlottesville. On December 29, 1953, Dr. Crutchfield found that claimant had a herniation at the interspace below the 5th lumbar, which necessitated an operation

and removal of the ruptured disc. Later the doctor advised claimant to avoid heavy work, certainly for several months until he had a recovery. On this and other testimony, the majority of the Commission (Nickels dissenting) found that the claimant had sustained injury by accident arising out of and in the course of his employment within the meaning of Code Sec. 65-7.

The employer contends that the Commission's finding of fact that claimant was injured as a result of the shifting of weight of the coil of wire during the loading operation is not supported by credible evidence and should be disregarded by this Court. This contention is based on alleged contradictory statements of claimant, and on the fact that two of his fellow employees, A. C. McConchie, who together with claimant was loading the wire, and S. L. Winslow, who came into view as the wire was being loaded on the truck, did not know or could not recall whether there had been any shifting in weight.

We find no substantial contradiction in the testimony of the claimant and his prior statement. The alleged prior inconsistent statement was made under the following circumstances:

J. H. Jones, a representative of the employer, interviewed claimant on January 4, 1954, within five days from the date of his operation while he was in bed in the hospital. Jones said he asked claimant "to tell me in detail everything he could about it (the accident)." Jones then wrote the substance of claimant's statements, read it to claimant, who signed it without reading it over. These statements in Jones' handwriting contained no reference to the shifting of the weight of the coil of wire. When asked as a witness why he did not tell Jones that the weight of the wire shifted while loading, claimant said: ". . . (W)hen Mr. Jones came up there and got this statement I was laying in the hospital and my back was hurting. I can't tell you word for word just what I told Mr. Jones"; after which he was asked: "You didn't say anything about the wire shifting when you felt the accident happen? A. I don't know whether I did or not. I thought I had it all there. I thought I told Mr. Jones." Even if this omission be regarded as inconsistent, the inconsistency is not sufficient to discredit claimant's entire testimony.

A. C. McConchie, a fellow worker, who together with claimant loaded the coil of wire on the truck, testified that he did not remember whether there was any shift in weight of the wire, but he did recall that immediately after the wire was loaded claimant said

he had hurt his back, "grabbed" his back with his hands, and the expression on his face indicated he was hurt.

S. L. Winslow, a fellow worker, testified that he came upon the scene as the coil of wire was being loaded in the truck. He did not observe any shifting in weight of the roll of wire, but he saw claimant as he turned away from the truck and heard him say: "I believe I have hurt my back" and "he made a face like something—and I knew something had happened."

Other evidence for claimant tends to show that if a coil of wire is not tied tightly and is being loaded by two men, it may shift either way and throw one of the men off balance and cause him either to drop it or sustain extra strain. Under the circumstances, we find no error in the Commission's finding of fact that claimant was hurt because of the shifting of weight of the coil of wire. Nor did it err in its conclusion of law that this injury was "by accident."

■ The meaning of the phrase "injury by accident", or "accidental injury", as used in the statutes of the various states, has been the source of a great volume of litigation in all jurisdictions. This Court has held in line with the majority of decisions in other states that when usual exertion results in actually breaking, herniating, or letting go with an obvious sudden mechanical or structural change in the body, whether external or internal, the injury is accidental. The minority view is that there can be no recovery unless claimant proves that the exertion which caused the disability was unusual, untoward, as well as unexpected. This subject, with citations of cases supporting the different views, is discussed at some length in I Larson's Workmen's Compensation Law, beginning at p. 519.

The facts in the case now under consideration are strikingly similar to the facts in *Big Jack Overall Co. v. Bray*, 161 Va. 446, 171 S. E. 686, which were that claimant, a woman apparently in normal health, attempted to lift a bundle of clothes weighing 40 or 50 pounds from a low truck, not straight up as she had been doing for four or five years, but with her body twisted to the right, and in so doing she felt a sudden snap or tear in her back and side, following by paralysis. It was held that the unusual position of her body, while voluntarily assumed, produced the unusual, sudden and unexpected strain upon the muscles of her back, for which she was allowed compensation. At page 451 (161 Va.), we adopted the following from Vance on Insurance: " 'The definition of accident generally assented to is an event happening without any human agency, or, if happening through human agency, an event which,

under the circumstances, is unusual and not expected by the person to whom it happens.' . . ." and added: ". . . (W)here the effect was not the natural and probable consequence of the means employed, and was not intended or designed, the injury was produced by accidental means."

We further said: "This is apparent when the term is applied to an injury resulting from a strain. A man intends to lift a heavy object, but in lifting he miscalculates the resisting force of his body, a blood vessel bursts and death follows. Even in such a case recovery has been allowed under an accident insurance policy which covered death 'in consequence of an accident.' " *U. S. Mutual Accident Association* v. *Barry*, 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. ed. 60.

This meaning of the phrase "injury by accident" has been applied or cited with approval in eleven Virginia cases: *Commonwealth* v. *Hughes*, 161 Va. 714, 172 S. E. 155; *Hurd* v. *Hesse and Hurt*, 161 Va. 800, 172 S. E. 289; *Continental Life Ins. Co.* v. *Gough*, 161 Va. 755, 172 S. E. 264; *Tyree* v. *Commonwealth*, 164 Va. 218, 179 S. E. 297; *Liberty Mutual Ins. Co.* v. *Money*, 174 Va. 50, 4 S. E. (2d) 739; *Hall's Bakery* v. *Kendrick*, 176 Va. 346, 11 S. E. (2d) 582; *Board of Supervisors* v. *Boaz*, 176 Va. 126, 10 S. E. (2d) 498; *Basham* v. *Lowe*, 176 Va. 485, 11 S. E. (2d) 638; *Lynchburg Foundry Co.* v. *Irvin*, 178 Va. 265, 16 S. E. (2d) 646; *Dixon* v. *Norfolk S. B., etc., Corp.*, 182 Va. 185, 28 S. E. (2d) 617; *Derby* v. *Swift & Co.*, 188 Va. 336, 49 S. E. (2d) 417; and *Farm Bureau Mut. Automobile Ins. Co.* v. *Hammer*, 177 F. (2d) 793.

In *Derby* v. *Swift & Co., supra*, the late Mr. Justice Gregory, speaking for the Court, in allowing recovery said, pp. 341 and 343 (188 Va.):

"The evidence shows that the employee strained or exerted himself in lifting or moving the loading table and felt a stinging pain in his left side and felt that something had pulled loose. There was a sudden, unusual and unexpected rupture of the abdominal wall which produced the hernia. The fact that he did not slip or fall does not prevent the circumstances from being an accident. . . .

"Men, like machines, may suddenly break down. Logically there should be no difference whether the breakdown occurs internally or externally. If strain causes a broken wrist, nobody questions the accidental nature of the injury. 'If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident.' . . . An accident may be said to arise out of and in the course of the

employment if the exertion producing the accident is too great for the man undertaking the work, even though the degree of exertion is usual and ordinary and 'the workman had some predisposing physical weakness.' . . . 'The question is not whether it would affect the ordinary man, but whether it affected the decedent.' " 59 Am. Jur., Workmen's Compensation, Sec. 255, p. 756; IV Schneider's Workmen's Compensation 444-6.

Mr. Justice Eggleston in *Aistrop* v. *Blue Diamond Coal Co.*, 181 Va. 287, 24 S. E. (2d) 546, at p. 293 (181 Va.) quoting in part from an article in 25 Harvard Law Review 328, 342, said:

" 'The injury, to be regarded as "by accident," must be received . . . at a particular time and in a particular place and by a particular accident. And the accident must be something the date of which can be fixed. It is not enough that the injury shall make its appearance suddenly at a particular time and upon a particular occasion.' In other words, the 'incident', the act done or condition encountered, 'must be shown to have occurred at some reasonably definite time.'

"On the other hand, . . . '. . . injury of gradual growth, . . . not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation.'

"This view has been adopted by the great weight of authority in this country." (Citing numerous cases).

The employer contends that the decision in *Rust Engineering Co.* v. *Ramsey*, 194 Va. 975, 76 S. E. (2d) 195, overruled the many prior Virginia decisions cited applying the majority rule as to the meaning of the phrase "injury by accident". This, the Court did not intend to do. We held, or intended to hold in that case that even though claimant's disability occurred in the course of his employment he was not entitled to compensation unless he went a step further and proved that the disability was a result of the hazard of employment. It appeared from the evidence that Ramsey, the claimant, had for some time prior to his disability been suffering from high diastolic blood pressure, which indicated a chronic case of arteriosclerosis. The medical testimony was to the effect that claimant's disability might have been due to a strain sustained while working and it might have been due to natural causes; hence, we held that claimant had failed to prove that his disability resulted

from an injury by accident that arose out of and in the course of his employment.

The employer's final contention is that claimant failed to establish by credible evidence a causal connection between the incidents of December 14, 1953, and claimant's disability.

The basis of this contention is the testimony of Dr. Crutchfield, the substance of which may be thus summarized: (1) claimant had a weak back and was more susceptible to injury than a normal person; (2) the herniated disc at the 5th lumbar interspace might have begun deteriorating some time before claimant suffered the strain on December 14, 1953; indeed, it might have begun deteriorating on or before October 27, 1952, the date of the first operation, and not have been then apparent; (3) there is nothing unusual for a person with a weak back to suffer a ruptured disc from heavy lifting; (4) only about fifty per cent of the persons suffering from ruptured discs have any history of an injury; and (5) he did not know whether the accident of December 14, 1953, was a proximate or contributing cause of claimant's disability. Part of Dr. Crutchfield's examination was as follows:

"Q. Is it possible, Dr. Crutchfield, that separate complaints could have resulted from separate injuries or accidents?

"A. Sure, it is possible.

"Q. Dr. Crutchfield, if a man is doing some lifting and during the process of lifting is struck by a pain in his back and thereafter upon the operation it is discovered he has a ruptured disc, do you have an opinion as to what effect the action causing that pain has on bringing it out?

"A. I think you would have to assume the lifting precipitated the rupture. . . .

"Q. Doctor, I take it that it is your conclusion, from what you testify, as to the condition of the disc you removed in L-5, that you cannot say with any degree of assurance at all that condition was caused by the accident or injury of any sort on December 14th, is that correct, there is no way you can tell?

"A. No, sir, no date or time."

A careful consideration of all of Dr. Crutchfield's testimony creates a doubt as to whether claimant's injury resulted from a natural cause or an undue strain. Claimant did not rest the issue of causation on the testimony of Dr. Crutchfield. The other evidence relied upon consists of the testimony of three lay witnesses and the report of Dr. Miller. Claimant himself testified that while

loading the wire he felt a popping or snapping in his back. His two fellow workmen stated that he immediately complained of his back, "grabbed" it with his hands, and the expression on his face showed he was suffering severe pain, which it later developed was caused by a ruptured disc. Dr. Miller, a general practitioner whose medical opinion is entitled to be considered, in his report stated his opinion thus:

"In my opinion a ruptured disc does not occur without some strain or injury as a causative agent. It is not necessary, however, that this strain or injury be violent in nature. Quite often ruptured intervertebral discs occur after seemingly minor strains.

"It is also my opinion that a person having suffered one ruptured intervertebral disc is more prone to the development of another ruptured disc in the area of the vertebrae immediately above and below the healed lesion.

"When I examined Mr. Quann on 12-15-53, he gave a history of having felt a sudden low-back pain while helping to lift a roll of wire on 12-14-53. My examination indicated a ruptured intervertebral disc. It is my opinion that the act of helping to lift a roll of wire the day before caused the ruptured disc or aggravated a disc previously ruptured."

The evidence on the issue of causation, when considered with all the testimony in the case, is sufficient to sustain the finding of the Commission. The order of the Commission is

*Affirmed.*